IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ZACHARY F.[1],

            Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

            Defendant.

Case No. 6:19-cv-01500-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

Zachary F. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision should be REVERSED and REMANDED for further proceedings.

*Procedural Background*

Plaintiff filed for DIB on September 15, 2016, alleging disability beginning February 1, 2016. (Tr. 15, 67.) Plaintiff alleges disability due to depression, migraines, anxiety, plantar fasciitis, foot and heel problems, back problems, high blood pressure, chronic bronchitis, sleep apnea, erectile dysfunction, incontinence, left ankle problems, hearing difficulties, explosive

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

OPINION AND ORDER – 1

disorder, and traumatic stress disorder. (Tr. 35-36, 68, 83.) His application was denied initially and upon reconsideration. (Tr. 15, 67, 81.) Plaintiff's hearing was convened on August 29, 2018, before an Administrative Law Judge ("ALJ"); Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). (Tr. 31-66.) On November 5, 2018, ALJ B. Hobbs issued a decision finding Plaintiff not disabled. (Tr. 15-26.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied his request for review, filed a complaint in the District of Oregon. (Tr. 1-3.)

*Factual Background*

Born in 1981, Plaintiff was 35 years old on his alleged disability onset date. (Tr. 45, 105.) Plaintiff completed high school and served in the military. (Tr. 37, 228, 246.) His past relevant work includes the jobs as a construction worker, core layer, dryer feeder, industrial cleaner, lumber feeder, fiberglass worker, and coupled production assembler. (Tr. 24-25.)

In a December 2016 functional self-assessment, Plaintiff alleged he is unable to work because he is unable to perform work activity for sustained periods and has sleep problems, depression, and pain. (*See* Tr. 258-65.) He spends much of the day lying down due to back and foot pain, and alleges he sleeps through "bad mental days." (Tr. 259.) He states he occasionally neglects personal hygiene due to depression. (Tr. 260.) Plaintiff can do his laundry, mow his yard, and perform home repairs, albeit with pain. (Tr. 261.) He can drive and grocery shop, and states he tries to get outside daily. *Id.* His hobbies include hunting, shooting, and watching television, but states he is not able to perform the outdoor activities as often as he once could. (Tr. 262.) Plaintiff indicates he is annoyed by people, and no longer has many friends. *Id.* He asserts that pain significantly limits his lifting and walking abilities. (Tr. 262.) He endorses difficulties in

concentrating, following spoken instructions, and getting along with coworkers. (Tr. 263.) Plaintiff notes he uses a cane prescribed by the Veterans Administration ("VA").

Plaintiff provided similar testimony at his August 2019 administrative hearing. (Tr. 33-66.) Plaintiff's attorney indicated that plaintiff was rewarded "permanent and total" disability by the VA. (Tr. 35.) He testified that he served in the U.S. Marine Corps for three years and was honorably discharged. (Tr. 38). On the first day of his most recent job in 2015 or 2016, plaintiff injured his ankle and received workers' compensation. (Tr. 39.) Plaintiff recounted a relatively extensive employment history, although many of the jobs were of short duration. (Tr. 38-46.) Plaintiff explained he was terminated on two occasions: once for an angry outburst directed at a coworker, and another for sleeping on the job. (Tr. 45-46.) However, he indicated most of his jobs ended due to market conditions affecting the lumber industry. (Tr. 46.) Plaintiff testified that he has lingering left ankle and hip problems for which he was prescribed a cane. (Tr. 47.) He experiences back pain which limits his ability to lift, stand, walk, and sit. (Tr. 47-48.) Plaintiff experiences plantar fasciitis pain and while sleeping wears special boots for that condition. (Tr. 48-49.) He has flares of foot pain after being on his feet for 30-40 minutes. (Tr. 49.)

Plaintiff further explained that his anger issues have improved with medication. (Tr. 49-50.) He also testified that medication is partially effective in treating his migraine headaches, which allegedly occur four or five days per week. (Tr. 51.) Plaintiff noted that although many of his medications are known to cause sleepiness, he is not affected by them. (Tr. 53.) Plaintiff violated a restraining order against his wife and explained he was not angry at the time. (Tr. 54.) Plaintiff also testified that he spends most of his day moving between his bed and his couch but drives his children to and from soccer practices. (Tr. 55.) Although he performs chores such as vacuuming and laundry, such activities cause him significant pain. (Tr. 55-56.) He can also mow

his lawn but requires extra time to perform this chore because during it he must lay in the grass to rest. (Tr. 56-57.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

\\\\\

\\\\\

OPINION AND ORDER – 4

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1560(c). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the initial alleged onset date of February 1, 2016. (Tr. 17.)

At step two, the ALJ found Plaintiff had the following severe impairments: obesity; depression; "degenerative joint disease of the left ankle (and a history of a knee and ankle sprain on the left)"; and degenerative disc disease. *Id.*

\ \ \ \ \

OPINION AND ORDER – 5

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listings of presumptively disabling impairments. (Tr. 18-20.)

Next, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with the following exceptions:

> [H]e can occasionally balance, stoop, kneel, and crouch, but never crawl. He can never climb ladders, ropes, or scaffolds. He can tolerate exposure to no more than moderately noisy work environments. He can sit for one hour at a time, but then will need to stand or walk for no more than one minute before resuming a seated position. Due to pain, side effects of medication, and mental impairments, he can understand, remember, and carry out only short and simple instructions. He can make only simple work-related judgments and decisions. He can have no more than frequent interactive contact with coworkers or supervisors, and no more than occasional interactive contact with the public.

(Tr. 20.)

At step four, the ALJ found Plaintiff incapable of performing any past relevant work. (Tr. 24-25.) At step five, the ALJ determined that considering the vocational factors and his RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including "jewelry preparer" and "eyeglass assembler." (Tr. 25-26.)

Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 26.)

*Discussion*

Plaintiff raises four assignments of error on appeal, including: (1) improperly rejecting subjective symptom allegations; (2) improperly evaluating medical source opinions of record; (3) failing to consider his VA disability rating; and (4) failing to provide legally sufficient reasons to reject lay testimony provided by his wife.

\ \ \ \ \

OPINION AND ORDER – 6

I.  Subjective Symptom Testimony

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effects of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). However, an ALJ may not reject a claimant's symptom testimony solely because it "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's decision may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Plaintiff argues the ALJ failed to provide specific, clear-and-convincing reasons to reject his symptom allegations. Plaintiff asserts that many of the ALJ's symptom allegation determinations are invalid because the ALJ failed to identify what testimony was not credible and why. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (general findings insufficient to reject symptom testimony). Plaintiff relies to a large extent on his testimony that when he is "having a bad mental health day, [he] will sleep all day," which he contends the ALJ failed to

OPINION AND ORDER – 7

consider. (Tr. 259.) Plaintiff asserts that because the ALJ failed to provide clear and convincing reasons to reject the testimony, it should be credited as true, and that such requires remand for payment of disability benefits.

Review of the ALJ's decision reflects that the ALJ did not specifically evaluate Plaintiff's assertion that when experiencing severe mental health symptoms, he sleeps all day. However, the ALJ's omission does not end the analysis. As recited above, even when an ALJ errs in rejecting some quantum of testimonial evidence, the error may be harmless where the ALJ provides other clear and convincing reasons to impugn the reliability of symptom allegations. *Batson*, 359 F.3d at 1197. Here, the ALJ found that Plaintiff's testimony was not fully reliable because his treatment was generally conservative, his allegations were inconsistent with his activities of daily living ("ADLSs"), and also inconsistent with the objective medical evidence of record. (Tr. 22-23.)

In support of the finding that Plaintiff's treatment was conservative, the ALJ explained that Plaintiff was treated with therapy and "multiple medications . . . with some improvement in symptoms." However, the ALJ failed to identify what testimony the conservative treatment undermined. Rather, the ALJ simply concluded that the RFC reflected the limitations to simple tasks and work-related judgments as well as limitations in interacting with others. Such conclusory, generalized findings do not meet the clear-and-convincing legal standard. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (ALJ must identify with specificity how the symptom allegations are undermined to reject them).

Similarly, the ALJ did not identify how Plaintiff's ADLs undermined his mental health allegations. The ALJ noted that plaintiff could perform several relatively limited activities such as personal hygiene, chores, and ability to go to the store (Tr. 23), but did not explain why those activities were inconsistent with his allegations of disabling depression. Instead, the ALJ

OPINION AND ORDER – 8

concluded that the activities "indicate a higher level of function than that alleged by the claimant." Such a conclusory finding falls well short of meeting the clear-and-convincing legal standard.

The ALJ also determined Plaintiff's mental health complaints were belied by the objective medical evidence. (Tr. 22.) However, the ALJ failed to provide any analysis of how the medical evidence was unsupported by or inconsistent with his reported symptoms of depression. Instead, the ALJ merely listed several instances where Plaintiff's medical providers recorded "alertness, orientation, a well-groomed appearance with appropriate attire and good hygiene, variable mood with congruent affect, normal speech, normal memory, average intellectual functioning, intact mentation, average fund of knowledge, and a linear, normal, and coherent thought process as well as intact attention and concentration, with fair to good insight and judgment." (Tr. 23.) Although such medical findings might be inconsistent with Plaintiff's mental health allegations, it is the duty of the ALJ to explain precisely which of the allegations were undermined, and why. Because the ALJ wholly failed to do so, the rationale is not clear-and-convincing.

The Commissioner contends that the ALJ's rationales for rejecting Plaintiff's depression symptoms were sufficient. But the Commissioner provides negligible support. For example, the Commissioner argues that the ALJ is not required to discuss every piece of evidence but must explain only why significant probative evidence has been rejected. Def.'s Br. 8 (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). The problem with the Commissioner's contention is that Plaintiff's allegation that he sleeps all day on bad mental health days *is* significant probative evidence, as the record demonstrates: the VE testified that an individual who misses more than two workdays per month is not employable in the national economy. (Tr. 62.) The Commissioner further argues that "this is not a case where the ALJ simply regurgitated medical evidence without identifying how the objective evidence in the record

OPINION AND ORDER – 9

undermined Plaintiff's complaints." Def.'s Br. 8. To the contrary, the discussion above demonstrates the ALJ did just that regarding Plaintiff's mental health complaints. In short, the Commissioner's arguments are meritless.

Accordingly, because the ALJ did not provide any other clear-and-convincing reasons to reject Plaintiff's mental health allegations, his failure to evaluate Plaintiff's assertion that he sleeps all day on bad days is not harmless error. Indeed, the court is unable to discern any clear-and-convincing rationales for rejecting any of Plaintiff's mental health allegations. Remand, therefore, is appropriate.

## II. Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly assess the opinions of two examining psychologists, Scott T. Alford, Psy.D., and Linda L. Schmechel, Ph.D. An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear-and-convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted).

A.  *Dr. Alvord*

Plaintiff argues the ALJ erroneously rejected Dr. Alvord's December 20, 2017 psychological evaluation. (*See* Tr. 777-84.) Dr. Alvord performed a psychological examination at the behest of the Oregon Developmental Disability Services. The doctor noted that Plaintiff was diagnosed with major depression by the VA and was being treated with medication prescribed for depression and anxiety. (Tr. 778.) Plaintiff endorsed symptoms of irritability, anger, low frustration tolerance, sleep and appetite disturbance, anhedonia (inability to feel pleasure), and episodes of hypomania (higher than usual energy levels, decreased need for sleep, and racing thoughts). *Id.* Dr. Alvord opined that Plaintiff suffered from "bipolar II versus cyclothymia" with "episodes of fairly significant depression." (Tr. 780.) Dr. Alvord further opined that Plaintiff had the following limitations: moderate difficulty in performing detailed and complex tasks; moderate difficulty interacting with supervisors, coworkers, and the public; moderate difficulty in performing work activities consistently; moderate difficulty in maintaining regular workplace attendance; moderate difficulty in completing a normal workday without interruption "from a psychological condition"; and moderate difficulty in dealing with normal workplace stressors. (Tr. 780, 782-83.) The ALJ accorded Dr. Alvord's opinion "partial weight" because "it is not internally consistent, nor is it entirely consistent with or supported by the overall medical evidence of record, which indicates that the claimant's symptoms are more closely accounted for by the diagnosis of depression." (Tr. 23.)

Plaintiff argues the ALJ's finding is impermissibly vague insofar as it fails to identify the record evidence that was inconsistent with the doctor's opinion, nor how such evidence undermined the doctor's conclusions. Pl.'s Br. 11. It does not appear, nor does the Commissioner argue, that Dr. Alvord's assessment is inconsistent with any other medical opinion of record;

OPINION AND ORDER – 11

therefore, the ALJ was required to identify clear-and-convincing reasons to reject the doctor's opinion. *Bayliss*, 427 F.3d at 1216. Furthermore, the court agrees the ALJ failed to identify how Dr. Alvord's opinion is internally inconsistent, or inconsistent with the overall medical evidence. As recited above, an ALJ must do more than state conclusions; rather, an ALJ must set out a detailed summary of the evidence at issue, including any conflicts with other evidence, explain why the ALJ's interpretation of the evidence, rather than the doctor's, is correct, and make relevant findings. *Morgan*, 169 F.3d at 600-01; *accord Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017) (citation omitted). The ALJ failed to do so.

The Commissioner contends that the ALJ's reference to the opinion's internal inconsistency is evident because the doctor "assessed 'moderate' limitations in all areas of functioning except for Plaintiff's ability to perform simple and repetitive tasks in his narrative report, but mostly 'mild' rather than 'moderate' limitations on his check-box evaluation of the same date." Def.'s Br. 16. However, the Commissioner's position is unpersuasive because it fails to identify any material internal inconsistency. Although Dr. Alvord's two lists of functional limitations differ in the number of moderate versus mild limitations, the lists are not uniform, so the relevance of the Commissioner's point is unclear. Moderate limitation in "performing detailed and complex tasks" (Tr. 780) is *consistent* with "carrying out complex instructions" (Tr. 782). Both lists identify moderate limitations in interacting with the public and supervisors. (Tr. 780, 782.) The single inconsistency the Court can discern is that one list describes moderate limitation in interacting with coworkers, while the other identifies mild limitation coworker interaction. *Id.* Even so, the ALJ did not identify any internal inconsistency in the doctor's opinion regarding interactions with coworkers. (*See* Tr. 23 ("[Dr. Alvord] further opined the claimant would have moderate difficulties interacting with . . . co-workers[.]").) As such, the court is precluded from

OPINION AND ORDER – 12

affirming the ALJ's finding on that basis. *Trevizo*, 871 F.3d at 675 ("We review only the reasons provided by ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citations omitted).

The Commissioner also argues the ALJ properly rejected Dr. Alvord's opinion because "the ALJ was clearly rejecting Dr. Alvord's conflicting diagnoses in favor of [Plaintiff's] longtime diagnosis of major depressive disorder." Def.'s Br. 16. Indeed, the ALJ found that the doctor's opinion was not "consistent with or supported by the overall medical evidence of record, which indicates that the claimant's symptoms are more closely accounted for by the diagnosis of depression." *Id.* Even so, it is not clear why attributing Plaintiff's symptoms to "bipolar II versus cyclothymia" as opposed to "major depressive disorder" has any bearing on the functional limitations Dr. Alvord assessed. The ALJ did not explain why the specific diagnosis attributed to Plaintiff's mental symptoms had any such bearing, nor does the Commissioner in his brief. As such, the court cannot affirm that the ALJ's rationales for rejecting the functional limitations arising from Plaintiff's mental health symptoms are clear and convincing, nor specific and legitimate.

B.   *Dr. Schmechel*

Plaintiff argues the ALJ erroneously evaluated the medical opinion of Linda L. Schmechel, Ph.D. Dr. Schmechel met with Plaintiff on July 14, 2016, for a psychological compensation and pension ("C&P") examination regarding his diagnosis of "major depressive disorder, recurrent, severe." (Tr. 707-12.) Dr. Schmechel reviewed a previous C&P from 2011, which diagnosed severe major depression at the time. (Tr. 708.) The previous C&P documented anger episodes since childhood that worsened after he was discharged, causing disruptions in family relationships. The report also noted fluctuating anger over time, which would prevent him from working in an

OPINION AND ORDER – 13

environment with significant "face to face contact with others." *Id.* Antidepressants were "sometime[s] effective in modulat[ing] his mood disorder." *Id.* Dr. Schemechel opined Plaintiff met the diagnostic criteria for "Major Depressive Disorder (recurrent and moderate)," with depressed mood, daily anhedonia, weight gain, insomnia, feelings of worthlessness, and "high irritability resulting in anger outbursts." *Id.*

Dr. Schmechel further assessed "occupational and social impairment with reduced reliability and productivity." (Tr. 709.) The doctor solicited a personal history and noted that since his last C&P, he had "failed in vocational rehabilitation placement due to anger outburst[s]." (Tr. 710.) She further noted "[s]poradic mental health treatment on an outpatient basis . . . [and] sporadic compliance with prescribed meds." Plaintiff exhibited a range of symptoms, including depressed mood; chronic sleep impairment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; and impaired impulse control, such as unprovoked irritability with periods of violence. (Tr. 710-11.) Dr. Schmechel indicated Plaintiff was "fully independent in activities of daily life," and displayed good grooming and hygiene. (Tr. 711.) She noted he lost his last job due to an anger outburst, his marriage suffered due to such outbursts, and he "[c]learly avoids admitting to psych problems." *Id.* The doctor further noted Plaintiff was discharged from the military because he could not attain or maintain weight guidelines. *Id.*

Dr. Schmechel provided a thorough assessment of Plaintiff's mental health characteristics in her "remarks" section. She indicated he was oriented in all spheres, demonstrated average or better intelligence, and had good problem-solving skills, aside from interpersonal situations. (Tr. 711-12.) The doctor noted Plaintiff "has [an] expectation of conflict & disrespect when meeting new people," and was "[s]ocially isolated & avoidant." (Tr. 712.) Plaintiff told the doctor he had

OPINION AND ORDER – 14

attempted vocational rehabilitation but failed a job trial due to anger. *Id.* Dr. Schmechel reported there were prior records that described Plaintiff as having returned from service duty "very angry and drinking heavily." *Id.* The records further indicated "anger management problems for which he's been in both individual and group treatment." *Id.* Dr. Schmechel concluded her report by identifying the following functional limitations: "[l]ack of anger management skills interfere sporadically with both vocational & personal relationships due to impulsive behavior . . . reacts this way when others . . . do not appreciate his actions . . . in ways he expects." *Id.* Although the ALJ did not identify Dr. Schmechel's report with specificity, the ALJ assigned partial weight "to the opinions of the [VA] disability examiners because the limitations outlined are not entirely consistent with the overall medical evidence of record . . . which supports the limitations in the above [RFC]." Tr. 23.

Plaintiff asserts the ALJ failed to provide legally sufficient reasons to reject the opinion of Dr. Schmechel. The Court agrees. First, the ALJ failed to provide any specific reasons to reject the doctor's opinion, aside from the general statement that the VA opinions were not entirely consistent with the medical record. The ALJ did not explain how the opinions were inconsistent, however, and the court is left to guess where the ALJ felt the inconsistencies lay, which does not meet the specific-and-legitimate reasons standard. Such conclusory determinations are erroneous. *Trevizo*, 871 F.3d at 677-78 (ALJ erred by failing to identify evidence in the record that contradicted a treating physician's opinion) (citing *Magallanes*, 881 F.2d at 751). Although the Commissioner argues the ALJ identified such inconsistencies earlier in the written decision, the ALJ merely identified conflicts between Plaintiff's own testimony and a handful of mental status examinations, rather than any conflict between medical opinion evidence and the mental status

OPINION AND ORDER – 15

examinations. (Tr. 19.)  Consequently, the decision still lacks valid rationales for rejecting Dr. Schmechel's report.

In sum, the ALJ erred in assessing the otherwise valid medical opinions of Drs. Alvord and Schmechel.

III.     VA Disability Rating

The relevant case law at the time of Plaintiff's initial application directs that an ALJ must ordinarily give great weight to a VA disability determination. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Still, an ALJ may accord less weight to a VA rating if the ALJ provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*  Here, the VA awarded Plaintiff a 90% service-connected rating with entitlement to individual disability effective July 16, 2012. (Tr. 207-12.) The ALJ indicated he considered the VA rating and noted the precedent established by *McCartey*. (Tr. 24.) The ALJ found the VA rating was "of minimal probative value" because the medical evidence, in addition to Plaintiff's ADLs, was "not consistent with the complete inability to perform basic work activities." *Id.*  In support, the ALJ noted that Social Security and VA benefits differ because the VA benefits analysis "involve[s] no actual evaluation of what the claimant could or could not do in a work setting." *Id.*

Plaintiff assigns error to the ALJ's finding, asserting the ALJ failed to meet the legal standard required under *McCartey*. In support, Plaintiff argues the VA determined he was "unable to secure and maintain gainful employment due to [his] service[-]connected disabilities." (Tr. 210.) Plaintiff further noted Dr. Schmechel's report, which identified symptoms including ongoing depressed mood, daily anhedonia, weight gain, insomnia, feelings of worthlessness, and high irritability resulting in anger outbursts," related to his major depressive disorder. (Tr. 211.)  \ \ \ \ \

The court agrees with Plaintiff's position. Ninth Circuit case law requires that an individual claimant's VA rating cannot be rejected on bases that are common to all VA ratings. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694-95 (9th Cir. 2009); *see Smith v. Berryhill*, No. 1:17-cv-00348-AC, 2018 WL 2432937, at *6 (D. Or. May 29, 2018). Accordingly, the ALJ's explanation of the differences between the two benefits programs is not a valid reason to reject the rating. The Commissioner's parallel argument is equally invalid, as the ALJ's rationales here were significantly less detailed than those in *Valentine*. *See* Def.'s Br. 17-19.

The ALJ additionally found Plaintiff's ADLs were inconsistent with "the complete inability to perform work activities." (Tr. 24.) But such a generalized finding is conclusory: it provides no persuasive, specific reasons supported by the record evidence as required by *McCartey*. The ALJ clearly erred.

IV.   Lay Witness Testimony

Lay witness testimony is otherwise competent testimony which an ALJ may not reject unless germane reasons for doing so are provided. *Molina*, 674 F.3d at 1114 (citations omitted). Under the Act, non-acceptable medical sources, such as licensed clinical social workers ("LCSWs"), and other sources, such as family members, both fall into the category of lay witnesses. *See* 20 C.F.R. §§ 404.1527(f), 404.1529(c)(3), 416.927(f), 416.929(c)(3). Here, Plaintiff's wife provided a December 2, 2016 assessment regarding her observations of his symptoms and functional limitations. (Tr. 266-73.) Her assessment noted issues similar to those Plaintiff reported, including inability to finish tasks, unusual anger outbursts, inability to get along with authority figures, and minimal ADLs. *See id.* The ALJ recounted Plaintiff's wife's assessment but did not specify the weight he accorded her testimony. (Tr. 24.)

\ \ \ \ \

OPINION AND ORDER – 17

At the time of the ALJ's decision, "reasons germane" to the lay witness were required to reject such testimony. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Here, the ALJ's failure to provide any reasons runs afoul of that requirement. The court acknowledges that an ALJ's failure to provide germane reasons may be harmless where the rejected testimony is substantially similar to a Plaintiff's own properly rejected symptom testimony, but because the ALJ failed to provide legally sufficient reasons to reject the latter, the harmless error rule is inapplicable here. In short, the ALJ's assessment of Plaintiff's wife's testimony is erroneous.

V.      Remand

The Ninth Circuit applies the three-step credit-as-true analysis to determine whether to remand a case for additional proceedings or to immediately calculate and award benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014). The analysis is triggered when an ALJ has failed to provide legally sufficient reasons for rejecting probative evidence, such as symptom evidence provided by a claimant, or a medical opinion. *Id.* at 1100-01. Based on the ALJ's errors set forth above, the first step is met.

Next, the court must determine if the record has been fully developed, such that there are no "outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1001 (citations omitted). The court finds that there are outstanding issues that preclude progressing to the third step of the credit-as-true analysis. Namely, although the court has identified ALJ error in evaluating Plaintiff's symptom testimony, the medical opinions of Drs. Alvord and Schmechel, the VA rating, and lay testimony, the "ordinary remand rule" requires that a remand for benefits is not appropriate based on ALJ error alone. *See, e.g., id.* at 1106 (reviewing court not required to credit evidence as true merely because the ALJ made a legal error). Such is the case here—the ALJ's rationales for rejecting evidence including symptom testimony, medical

opinions, the VA rating, and lay testimony were erroneous because the ALJ's findings were not supported by sufficiently specific rationales. The record contains evidence that *could* validly direct a non-disability decision if properly supported, including inconsistencies in the record and evidence suggesting some of the improperly rejected evidence *might* be supported if the ALJ had provided legally sufficient analyses. In any event, the court "retains the flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1102 (citations omitted). A question exists on this record whether the third step of the credit-as-true analysis is met; thus, further proceedings may be beneficial in reaching a conclusive determination.

For these reasons, this matter is remanded to the Commissioner on an open record to address the errors identified herein. *Brown-Hunter*, 806 F.3d at 496 (remanding for further proceedings on an open record).

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Plaintiff's application for DIB is REVERSED and REMANDED for further proceedings.

DATED this 19th day of March, 2021.

_____
John V. Acosta
United States Magistrate Judge

OPINION AND ORDER – 19